

## NUMBER 13-20-00213-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI − EDINBURG

**CITY OF VICTORIA, TEXAS,**                                                                    **Appellant,**

**v.**

**KEITH REDBURN,**                                                                    **Appellee.**

### On appeal from the 377th District Court
### of Victoria County, Texas.

## MEMORANDUM OPINION

**Before Justices Benavides, Hinojosa, and Tijerina**
**Memorandum Opinion by Justice Benavides**

This case requires us to examine the contours of the *Reata* abrogation-of-immunity rule. *See Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371 (Tex. 2006). Appellant the City of Victoria intervened in a lawsuit by seeking a declaration that it held a prescriptive drainage easement across appellee Keith Redburn's property, and Redburn filed a conditional counterclaim for injunctive relief against the City. Redburn alleges that

the vast majority of the City's stormwater drainage system, including on either side of his property, consists of buried pipes, and that the City's use of the open ditch across his property has caused significant damage. To the extent an easement exists, Redburn contends the City has a duty to use it in a reasonable manner that minimizes the burden on his property. Thus, Redburn asked the trial court to enjoin the City by ordering it to extend and bury its drainage pipes under his property, just as it has done elsewhere. The trial court granted the City's motion for summary judgment on its easement claim but denied its plea to the jurisdiction on Redburn's claim for injunctive relief.

On appeal, the City argues that Redburn's claim is inconsistent with *Reata* because it would require the City to expend public funds to construct a significant improvement on Redburn's property even though the City's claim did not seek monetary relief. We conclude that Redburn's claim is barred by governmental immunity. We reverse and render a judgment dismissing Redburn's claim for want of jurisdiction.

## I.    BACKGROUND

This case has a long procedural history as both this Court and the Fifth Circuit Court of Appeals have previously issued opinions on the dispute. *See Redburn v. Garrett*, No. 13-12-00215-CV, 2013 WL 2149699 (Tex. App.—Corpus Christi–Edinburg May 16, 2013, pet. denied) (mem. op.); *Redburn v. City of Victoria*, 898 F.3d 486 (5th Cir. 2018).

The origins of the dispute trace back to the late 1880s when the City first began developing its storm water drainage system and dug what would become known as Philip's Ditch. *City of Victoria*, 896 F.3d at 490. As the City expanded, the ditch was extended across the subject property and integrated into the City's drainage system. *Id.*

2

Although the City moved its storm-sewer system underground by 1932, for unexplained reasons, the City continued to rely on the open ditch to carry storm-sewer runoff across the property and back into the City's underground pipe system on the other side. *Id.* At some point, the City installed concrete culverts on either side of the property to aid the flow of drainage. *Id.*

The City contends that when Redburn purchased the property in 2004, the ditch and the concrete culverts were visible and apparent. *Garrett*, 2013 WL 2149699, at *2. In 2006, Redburn sent several letters to the City complaining that the storm-water flow was destroying his property. *City of Victoria*, 896 F.3d at 491. The City never responded, and Redburn plugged the drainpipe entering his property with five tons of concrete in 2011. *Id.*; *Garrett*, 2013 WL 2149699, at *2.

After the City notified Redburn that his actions were in violation of a City ordinance, Redburn filed suit against two City officials, seeking to enjoin the City from entering his property to remove the plug. *Garrett*, 2013 WL 2149699, at *2. The City filed a petition in intervention, requesting a declaration that it holds a drainage easement across Redburn's property. *Id.* Redburn amended his petition to name the City as a defendant and included his own claim for a declaratory judgment that the City "does not have an easement or other legal authority to enter [his] property." *Id.* at *3, 10.

The City and its officials filed pleas to the jurisdiction based on immunity, and the trial court granted those pleas. *Id.* The trial court's rulings lead to the previous interlocutory appeal to this Court. We affirmed the dismissal of Redburn's claims against the officials based on the Texas Tort Claims Act's election of remedies provision. *Id.* at *5 (citing TEX.

3

Civ. Prac. & Rem. Code Ann. § 101.106(f)). However, citing the principles established in *Reata*, we held:

> [Redburn's] claim for a declaratory judgment that the City "does not have an easement or other legal authority to enter [his] property" is sufficiently connected to the City's claim that the City has an easement encumbering [Redburn's] property. If it were established, [Redburn's] claim would defeat the City's claim and vice versa. Therefore, the trial court has jurisdiction to hear [Redburn's] claim for declaratory judgment.

*Id.* at *9. On the other hand, we concluded that Redburn had failed to establish that his claim for injunctive relief—originally alleged against the officials—was properly defensive or would offset any claim asserted by the City. *Id.* at *10.

On remand, Redburn amended his petition, adding a federal takings claim, and the City removed the case to federal court. *City of Victoria*, 896 F.3d at 491. The district court granted summary judgment in favor of the City, concluding the City had a drainage easement across Redburn's property, the City had no duty to accommodate Redburn's use of the property, and the City had not taken Redburn's property by exceeding the scope of its easement. *Id.*

The Fifth Circuit Court of Appeals agreed with the City that Redburn's takings claim was time-barred because Redburn did not file suit until some five years after he began complaining to the City. *Id.* at 496. But the court concluded that genuine issues of material fact precluded summary judgment on the City's implied easement and easement by estoppel claims. *Id.* at 491–94. Additionally, the court concluded that (1) Texas law recognizes a "reasonable use" obligation on easement holders to minimize the burden on the servient estate, and (2) Redburn had presented evidence that the City's use of the ditch had caused unreasonable damage to his property. *Id.* at 494–95. Thus, the court

4

gave the following instruction: "[I]f the City can demonstrate that it has an easement on remand, the district court must consider whether the City's use of Redburn's property comports with Texas state law principles of 'reasonable use.'" *Id.* at 495. The court did not consider whether such a claim would be barred by immunity. *See id.*

With the only federal claim disposed of, the federal district court remanded the case to state court. Redburn then amended his petition, removing his claim for declaratory relief and adding a contingent claim for injunctive relief. Specifically, "[Redburn] seeks an injunction that the City may not continue its use of any claimed easement unless and until it utilizes methods and means that are as little burdensome as possible, which [Redburn] asserts is the use of enclosed pipe."

The City filed a motion for summary judgment, this time claiming a prescriptive easement, and a plea to the jurisdiction on Redburn's amended petition. The trial court granted the motion for summary judgment but denied the plea, and this appeal ensued.

## II.   STANDARD OF REVIEW

Subject matter jurisdiction is essential to a court's authority to decide a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993)). Whether a trial court has subject matter jurisdiction is a question of law we review de novo. *State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). A plaintiff must plead facts that affirmatively demonstrate the trial court's subject matter jurisdiction. *Fleming v. Patterson*, 310 S.W.3d 65, 68 (Tex. App.—Corpus Christi–Edinburg 2010, pet. struck) (citing *Tex. Air Control Bd.*, 852 S.W.2d at 446).

5

A plea to the jurisdiction is a procedural vehicle used to challenge the trial court's jurisdiction. *Blue*, 34 S.W.3d at 554. When a plea challenges the sufficiency of the pleadings, we construe the pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law. *Id.*

### III. APPLICABLE LAW

#### A. Immunity

Governmental immunity from suit protects the political subdivisions of the State from lawsuits for money damages and deprives a trial court of subject matter jurisdiction over the plaintiff's claims. *Reata Const. Corp.*, 197 S.W.3d at 374 (citations omitted). Immunity's core function is to protect the public from the improvident actions of their governments. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Without this protection, public funds would be used to defend lawsuits and pay judgments instead of providing public services, leading to "governmental paralysis." *Hughes v. Tom Green County*, 573 S.W.2d 212, 218 (Tex. 2019). The judiciary generally defers to the Legislature to waive immunity because the Legislature is better suited to address the conflicting policy concerns associated with allowing suits to proceed against the government, including the management of fiscal matters through the appropriations process. *Reata Const. Corp.*, 197 S.W.3d at 375. As a creature of the common law, however, the judiciary determines the existence of immunity in the first instance, delineating its boundaries where immunity's purposes are not implicated. *Id.* at 374. If

6

immunity applies to a claim, "*then* the judiciary defers to the legislature to waive such immunity." *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 435 (Tex. 2016) (citations omitted).

When a governmental entity seeks affirmative relief in a trial court, it does so of its own volition, making a calculated decision to spend public funds to prosecute its claims. *Reata Const. Corp.*, 197 S.W.3d at 375. Moreover, "[i]f the opposing party's claims can operate only as an offset to reduce the government's recovery, no tax resources will be called upon to pay a judgment, and the fiscal planning of the governmental entity should not be disrupted." *Id.* Therefore, because it is both fundamentally fair and consistent with immunity's purpose of protecting public funds, "adverse parties [may] assert, as an offset, claims germane to, connected with, and properly defensive to those asserted by the governmental entity." *Id.* at 375, 377. However, absent a legislative waiver, the governmental entity "continues to have immunity from affirmative damage claims against it for monetary relief exceeding amounts necessary to offset the [government's] claims." *Id.* at 377.

"*Reata's* application is not dependent on the assertion of monetary damages but rather on the relationship of the parties' adverse claims." *Hughes*, 573 S.W.2d at 218. For example, in *Hughes*, the Supreme Court of Texas found that where a county and heirs at law both claimed superior title to mineral interests under a will, the heirs' adverse claim was properly defensive because it "served to inferentially rebut the County's affirmative claim for relief." *Id.* at 219; *see also City of Dallas v. Albert*, 354 S.W.3d 368, 375 (Tex. 2011) ("[T]he Officers' claims were properly defensive to the City's counterclaim because

7

a finding that an officer had been underpaid would at least inferentially rebut the City's claims that the officer had been paid correctly or overpaid for the particular period for which the underpayment was made."). Additionally, because neither party in *Hughes* sought monetary relief, the supreme court concluded that allowing the heirs' competing claim to proceed against the county would not offend immunity's purpose. *Hughes*, 573 S.W.2d at 219–20 ("Litigation over a gift does not implicate taxpayer dollars or otherwise threaten the public treasury.")

## B.    Easements

An easement "is a nonpossessory interest that authorizes its holder to use the property for only particular purposes." *Lance v. Robinson*, 543 S.W.3d 723, 736 (Tex. 2018) (quoting *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002)). "Because the easement holder is the dominant estate owner and the land burdened by the easement is the servient estate, the property owner may not interfere with the easement holder's right to use the servient estate for the purposes of the easement." *Severance v. Patterson*, 370 S.W.3d 705, 721 (Tex. 2012) (citing *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 207 (Tex. 1963)). However, "[t]he holder of a general easement must utilize the land in a reasonable manner and only to an extent that is reasonably necessary." *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 690 (Tex. 2020) (citing *Severance*, 370 S.W.3d at 721). This reasonable-use requirement "provides a vehicle for the servient land owner to pursue recourse if the grantee utilizes the servient land in an unreasonable or unnecessary manner." *Id.* A claimant that seeks to establish an easement by prescription must show that its use of the land was: (1) open and

notorious, (2) adverse to the owner's claim of right, (3) exclusive, (4) uninterrupted, and (5) continuous for a period of ten years. *McClung v. Ayers*, 325 S.W.3d 723, 727 (Tex. App.—Texarkana 2011, no pet.); *Wilson v. McGuffin*, 749 S.W.2d 606, 610 (Tex. App.—Corpus Christi–Edinburg 1988, writ denied).

## IV.  ANALYSIS

The City does not dispute that Redburn's claim for injunctive relief is germane to and connected with its prescriptive easement claim. Instead, the City argues that Redburn's claim for injunctive relief is effectively a claim for monetary damages because it would require the City to expend public funds to construct a significant improvement on Redburn's property. Because it did not recover monetary relief, the City reasons that such an expenditure cannot serve as an offset, and therefore Redburn's claim is inconsistent with *Reata*. We agree.

The supreme court has explained that a counterclaim is "germane" when it is relevant to the government's claims. *Albert*, 354 S.W.3d at 375 (citing BLACK'S LAW DICTIONARY 756 (9th ed. 2009)). The term has also been defined as "closely akin," "being at once relevant and appropriate," "closely or significantly related," and "pertinent." *Sweeny Comm. Hosp. v. Mendez*, 226 S.W.3d 584, 592 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 525 (11th ed. 2003)); *see Tex. Dep't of Transp. v. Crockett*, 257 S.W.3d 412, 415 (Tex. App.—Corpus Christi–Edinburg 2008, pet. denied). Additionally, the term "connected" means "united, joined or linked" and "joined together in sequence; linked coherently" and "having parts or elements logically linked together." *Mendez*, 226 S.W.3d at 592 (citing MERRIAM-WEBSTER'S

9

COLLEGIATE DICTIONARY 525 (11th ed. 2003)). Redburn's counterclaim is both relevant and logically linked to the City's claim: they both concern the extent of the City's right, if any, to use the open ditch across Redburn's property for drainage purposes. *See Lynch*, 595 S.W.3d at 690.

Yet, Redburn's counterclaim is not properly defensive to the City's claim. The supreme court has explained that a counterclaim is "properly defensive" when it inferentially rebuts the government's claim. *Hughes*, 573 S.W.3d at 219; *Albert*, 354 S.W.3d at 375. Indeed, that is why we previously held—before *Hughes* or *Albert*—that Redburn's dueling claim for declaratory relief was properly defensive. *Garrett*, 2013 WL 2149699, at *10 (explaining that "[Redburn's] claim would defeat the City's claim and vice versa"). But Redburn has now abandoned his claim for declaratory relief, and his new claim for injunctive relief does not rebut, inferentially or otherwise, any element of the City's claim. To the contrary, as Redburn acknowledges, his claim is conditioned on the City prevailing on its claim—if the City has an easement, then it has a duty to use the easement in a reasonable manner, which, according to Redburn, includes extending and burying drainage pipes across his property.

Even if Redburn's claim is properly defensive, "the principles that informed the boundaries of sovereign immunity in *Reata* dictate a different result here." *Hughes*, 573 S.W.3d at 219. If Redburn prevails on his claim, then, unlike *Hughes*, the City's fiscal planning will be disrupted because it will be required to allocate tax resources to construct significant improvements on Redburn's property. *See id.* at 219–20 ("The litigation thus does not invoke the primary policy concerns supporting immunity from suit—the payment

10

of tax dollars subject to legislative discretion or judicial intrusion on exercising that discretion."); *see also Reata*, 197 S.W.3d at 375 ("If the opposing party's claims can operate only as an offset to reduce the government's recovery, no tax resources will be called upon to pay a judgment, and the fiscal planning of the governmental entity should not be disturbed."). On the other hand, the City's affirmative claim for relief only seeks a declaration of its right to use Redburn's property for drainage purposes—i.e., nonmonetary relief. Therefore, the City did not "step[] outside of the sphere of its immunity" from adverse claims that reach into the public coffers. *Nazari v. State*, 561 S.W.3d 495, 507 (Tex. 2018) (citing *Reata*, 197 S.W.3d at 375–76). Because Redburn's contingent counterclaim does not fall within the ambit of *Reata*, we sustain the City's issue.

## V. CONCLUSION

We reverse and render a judgment dismissing Redburn's claim for want of jurisdiction.

GINA M. BENAVIDES
Justice

Delivered and filed on the
1st day of April, 2021.

11